IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| WALTER E. HUIZENGA, )<br>)<br>        Plaintiff, )<br>)<br>        v. )<br>)<br>AMERICAN INTERNATIONAL )<br>AUTOMOBILE DEALERS )<br>ASSOCIATION, *et al.,* )<br>)<br>        Defendants. ) | 1:05cv264(JCC) |

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendants'
Motion for Summary Judgment and Plaintiff's Motion for Partial
Summary Judgment.  For the following reasons, the Court will
grant Defendants' Motion in part and deny it in part, and grant
Plaintiff's Motion in part and deny it in part.

**I.  Background**

Plaintiff, Walter E. Huizenga, was formerly employed as
the president of the American International Automobile Dealers
Association ("AIADA") and its for-profit subsidiary, AIADA
Services.  On January 31, 1997, Plaintiff and AIADA entered into
a written employment agreement for a five year term beginning
April 1, 1996 and ending March 31, 2001.  On February 5, 1999,
the parties agreed to extend the term of Plaintiff's employment
through March 31, 2003.  On November 8, 2002, the AIADA Board of
Directors voted not to renew Plaintiff's contract upon its

expiration.  Plaintiff's employment with AIADA ended with the
expiration of this contract on March 31, 2003.

Plaintiff thereafter filed this action in the Western
District of Michigan against AIADA, AIADA Services, and eight
individual defendants.  Seven of the individual defendants were
members of the AIADA Board of Directors at the time the relevant
decisions were made; the eighth, Marianne McInerney, was hired as
Plaintiff's successor and began working for AIADA before March
31, 2003.  The Western District of Michigan found that its
personal jurisdiction was lacking against each defendant and
ordered the action transferred to this Court pursuant to 28
U.S.C. § 1631.  Plaintiff's Complaint asserted sixteen separate
claims,[1] and the defendants have moved for summary judgment as to
each claim.  Plaintiff has moved for summary judgment as to three
breach of contract claims.  These Motions are currently before
the Court.

## II.  Standard of Review

As set forth in Rule 56 of the Federal Rules of Civil
Procedure, summary judgment is appropriate when the moving party
can show by affidavits, depositions, admissions, answers to
interrogatories, pleadings, or other evidence, "that there is no
genuine issue as to any material fact and that the moving party

---

[1]Plaintiff has since informed the Court that he seeks recovery against
the individual defendants only with respect to the tort claims:  Counts X
through XVI.  Plaintiff asserts Counts I through IX against AIADA and AIADA
Services only.

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party. *See id.* In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. *See id.* As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

## III.   Analysis

A.   <u>Counts I Through IV:  Breach of Contract Claims</u>

Plaintiff's employment agreement with AIADA and AIADA

Services stated his duties as follows:

> The Employee shall perform the duties and
> responsibilities of President and Chief Executive
> Officer of the Association and Services in accordance
> with the bylaws, rules, and regulations of the
> Association and Services, as applicable.  The Employee
> shall perform such other duties and services as may be
> entrusted to him by the Association and Services in
> accordance with its bylaws and consistent with the
> Employee's position with the Association and Services.

(Compl. Ex. B, ¶ 3(A).)  Thus, Plaintiff's contract incorporated

the AIADA bylaws by reference.  The bylaws provided for

Plaintiff's authority as follows:

> The President shall be the Chief Operating Officer[2] of
> the Association.  He shall carry out the policies
> established by the Board and the Executive Committee
> and shall administer the staff and other vendors
> providing goods or services to the Association.

(Pl.'s Compl. Ex. E, Art. III § 5.)  While this bylaw provision

seems to charge the president with the mandatory duty of

---

[2]While the bylaws refer to the AIADA president as "Chief Operating
Officer" and Plaintiff's employment agreement referred to his position as
"President and Chief Executive Officer," the nominal distinction between the
titles did not confer any additional authority upon Plaintiff.  The bylaws
provide that "[t]he Board shall have control and management of the affairs of
the Association, with sole authority to employ, fix the compensation, and
terminate the employment of the Chief Operating Officer *and determine his
title*, which authority shall not be delegated."  (Pl.'s Compl. Ex. E, Art. II
§ 1(B) (emphasis added).)  The bylaws also designate the chairman of the Board
of Directors as the "Chief Executive Officer."  (*Id.*, Art. III § 2(A).)  The
Board could not confer the authority of the "Chief Executive Officer" upon
Plaintiff consistently with the bylaws, and thus, it is clear that the
employment agreement used "President and Chief Executive Officer" merely as a
nominal title.

administering the AIADA staff and other vendors, elsewhere the

bylaws make clear that this duty is subject to the authority

granted by the Board of Directors:

> The Chief Operating Officer is authorized to engage and
> fix the compensation of the other employees and to
> employ vendors providing goods and services to the
> Association in accordance with such instructions as may
> be issued from time to time by the Board of Directors.

(*Id.*, Art. II § 1(B).)  Finally, with respect to the authority of

the Executive Committee of the Board of Directors, the bylaws

mandate:

> During the intervals between the meetings of the Board
> of Directors, the Executive Committee shall possess and
> exercise all the powers of the Board of Directors in
> the management and direction of the affairs of the
> Association except to the extent limited by the
> Virginia Nonstock Corporation Act.  The actions of the
> Executive Committee shall be reported to the Board of
> Directors at its meeting next succeeding such action,
> and shall be subject to revision and alteration by a
> 2/3 vote by the Board, provided that no rights of third
> parties shall be adversely affected by such revision or
> alteration.

(*Id.*, Art. IV § 1(C).)

According to Plaintiff, AIADA breached his employment

agreement by divesting him of his duties as president prior to

the March 31, 2003 expiration of his employment agreement.  On

July 15, 2002, the Executive Committee of the AIADA Board of

Directors relieved Plaintiff of the majority of his

responsibilities.  In a meeting the following week, the chairman

of the Board of Directors, Jamie Auffenberg, told the AIADA staff

that they would thereafter report to him and that he would manage

-5-

all vendor relationships.  Between July 15, 2002 and March 31,
2003, Plaintiff's final date in AIADA's employ, Plaintiff was
given minor administrative duties and other projects.  Plaintiff
no longer had the authority to carry out many of his previous
duties, including the hiring, firing, and management of staff.[3]
Based on these events, Plaintiff has asserted claims for breach
of his employment agreement, constructive termination without
cause, improper termination due to lack of notice, and breach of
contract due to AIADA's failure to grant him severance payments.

The Court will first consider Plaintiff's claim for
breach of his employment agreement.  Plaintiff has cited several
decisions holding that an employer's action altering an
employee's job responsibilities, as defined in an employment
agreement, can constitute a breach of that contract.  *See, e.g.,
Mair v. S. Minn. Broadcasting Co.*, 32 N.W.2d 177, 178-79 (Minn.
1948).  The application of this rule presupposes that the
employment agreement at issue details the employee's job
functions.  In this case, however, the employment agreement
provided merely that Plaintiff would perform the duties of AIADA
president as stated in the organization's bylaws, rules, and

---

[3] Defendants dispute this contention, claiming that AIADA staff continued
to report to Plaintiff until March 31, 2003 and that Plaintiff continued to be
involved in integral decisions.  Nevertheless, Plaintiff's version of the
facts must be presented where the parties' version conflict, at least to the
degree that such allegations have support in affidavits, depositions, or other
documentary evidence.  *See Paroline v. Unisys Corp.*, 879 F.2d 100, 102-03 (4th
Cir. 1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir. 1990).

regulations, and that Plaintiff would be entrusted with other tasks consistent with the bylaws.  The relevant bylaw provisions state that the AIADA president's job responsibilities are a function of the instructions and policies emanating from the Board of Directors and, during intervals between Board meetings, the Executive Committee.

The Fourth Circuit has held that "[i]f a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue."  *World-Wide Rights Ltd. Partnership v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir. 1992).  The bylaw language incorporated by reference into Plaintiff's contract leaves the Court with the inescapable conclusion that under Plaintiff's employment agreement, the Board of Directors and its Executive Committee retained the power and authority to define Plaintiff's job responsibilities.  Consequently, Plaintiff's contract was not breached when the Executive Committee redefined Plaintiff's job responsibilities.[4]  While Plaintiff's subsequent duties may not

---

[4]This action occurred during an interval between meetings of the Board of Directors.  Article IV, § 1(C) of the bylaws provides that such Executive Committee action is subject to alteration or revision by the Board of Directors at its following meeting.  At its November 8, 2003 meeting, the Board did not revise or alter the Executive Committee's redefinition of Plaintiff's role, but rather voted to allow Plaintiff's employment contract to expire.

The Court also notes that the Executive Committee's redefinition of Plaintiff's responsibilities did not violate the nondelegation provision of Article II § 1(B) of the bylaws.  This provision prohibits the Board of Directors only from delegating its authority to employ, fix the compensation

–7–

have been typical for the president of an organization, the Court will not hold Defendants bound to job responsibilities that are not in Plaintiff's contract.  Accordingly, the Court will grant Defendants' Motion for summary judgment as to Count I.[5]

Second, Plaintiff has claimed that Defendants' actions amounted to a constructive termination without cause.  "A constructive discharge occurs 'when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'"  *Bristow v. Daily Press*, 770 F.2d 1251, 1255 (4th Cir. 1985) (quoting *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984)).  Implicit in this definition is the fact that a constructive discharge cannot occur until the employee resigns from his job.  *See Jacobson v. Parda Fed. Credit Union*, 577 N.W.2d 881, 885 (Mich. 1998).  In this case, Plaintiff remained in AIADA's employment after his working conditions changed in July 2002, continuing to work for AIADA through March 31, 2003, when his contract expired.  A constructive termination claim will not lie under such circumstances, and Defendants' Motion for summary judgment will be granted as to Count II.

---

of, terminate, and determine the title of the president.  *See supra* note 2. The section does not prohibit the Board from delegating its authority to define or redefine the responsibilities of the president.

[5] Plaintiff has also filed a Motion for summary judgment on Count I.  For the reasons stated in the body of this Opinion, the Court will deny Plaintiff's Motion.

Third, Plaintiff's employment agreement required, as a precondition to Plaintiff's termination, written notice of the grounds for termination and an opportunity for Plaintiff to be heard before the Board of Directors.  Plaintiff claims that the Executive Committee's decision to alter his responsibilities constituted a decision to terminate him from his position as president, and that this action thus breached the notice provision of his contract.  Because the Executive Committee retained the authority to redefine Plaintiff's role as president, however, its action could not have constituted a termination. The Board of Directors later voted to allow Plaintiff's contract to expire, but such is distinguishable from a termination.  *See Davis v. Am. Soc'y of Civil Eng'rs*, 330 F. Supp. 2d 647, 660 (E.D. Va. 2004).  Finally, the parties' employment relationship concluded with the expiration of Plaintiff's contract.  As such, the contract, including its notice provision, was no longer in force when Plaintiff left AIADA's employment.  Because the notice provision was not implicated by Defendants' actions, they are entitled to summary judgment on Count III.

Fourth, Plaintiff's employment agreement entitled him to receive severance pay in the event that the agreement was terminated without cause.  Plaintiff argues that the severance pay provision of his contract was ambiguous as to whether it applied upon the termination of the agreement or upon Plaintiff's

termination as an AIADA employee.  Plaintiff claims, in either
case, that AIADA breached the agreement by failing to issue such
severance payments to him.  Even if the Court were to find this
provision ambiguous, however, Plaintiff's claims must fail.  The
employment contract was never terminated; rather, AIADA allowed
the contract to expire.  *See Davis*, 330 F. Supp. 2d at 660.
Furthermore, as stated above, the agreement was not in effect
when Plaintiff ceased to be an AIADA employee.  The provisions of
the employment agreement requiring severance pay were therefore
never implicated.  Accordingly, the Court will grant Defendants'
Motion for summary judgment as to Count IV.[6]

B.  Count V:  Breach of Contract for Deferred Compensation

        Plaintiff's January 31, 1997 employment agreement
provided for a deferred compensation plan.  Under Plaintiff's
separate deferred compensation agreement, AIADA was to contribute
$44,080 for 1995 and 1996, and $20,448 for each subsequent year
the contract was in effect.  The January 1997 employment
agreement also obligated AIADA to cause AIADA Services to
contribute $32,000 toward this plan in the first year and a
minimum of this amount in subsequent years.  In April 1997,
Plaintiff and AIADA Services executed an amended deferred
compensation agreement.  The April 1997 amendment stated an

---

[6]Plaintiff has also filed a Motion for summary judgment as to Count IV.
For the reasons stated in the body of this Opinion, the Court will deny
Plaintiff's Motion.

intent to "provide [Plaintiff] with an additional amount of deferred compensation and, accordingly, . . . modify and replace the Original Agreement with this Restated Agreement." (Pl.'s Mot. Ex. E.) Under the April 1997 amendment, Plaintiff was to receive from AIADA Services an additional $20,448 for each calendar year of Plaintiff's employment from and after 1997. This amount was in addition to the $32,000 per year that Plaintiff was due under the January 31, 1997 agreement. Plaintiff claims that AIADA breached its agreements with him by failing to render this deferred compensation, as well as $76,376.60 that he claims was due under his Section 457 plan.[7]

Defendants argue that they are entitled to summary judgment because Plaintiff did not exhaust his administrative remedies before filing this action. *See, e.g. Gayle v. United Parcel Serv.*, 401 F.3d 222, 226 (4th Cir. 2005) (holding that an ERISA plan participant must exhaust administrative remedies before filing an action in federal court). However, in *Gayle*, as well as in each other case cited by Defendants, the benefit plan contained an internal review procedure. *See id.* at 225; *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80, 82 (4th Cir.

---

[7]In his Complaint, Plaintiff also alleged that AIADA breached its contract by failing to maintain his life insurance policy and denying Plaintiff an opportunity to invest his deferred compensation. Defendants have moved for summary judgment as to these allegations, and Plaintiff has not responded to Defendants' arguments on these matters. Accordingly, the Court will grant Defendants' Motion for summary judgment as to the allegations set forth in subparagraphs (c) and (g) of Count V.

1989); *Hailey v. Commonwealth Aluminum Corp.*, 903 F. Supp. 910, 911 (D. Md. 1995).  By contrast, the AIADA and AIADA Services deferred compensation plans contained no notice or appeal procedures.  Defendants concede this fact.  Plaintiff cannot be held accountable for failing to exhaust an administrative remedy that did not exist.  Accordingly, the Court will deny Defendant's Motion as to the remainder of Count V.

Plaintiff has also moved for summary judgment as to Count V, seeking $661,833.62 in deferred compensation.[8] Defendants do not dispute Plaintiff's interpretation of the deferred compensation agreements or the subsequent amendment to the agreement with AIADA Services.  Instead, Defendants question the validity and enforceability of the April 1997 amendment to the AIADA Services deferred compensation agreement.  Although this amendment was executed by Charles Smith, chairman of the AIADA Services Board of Directors at the time, Defendants contend that the Board itself never approved the amendment.  *See WBM, LLC v. Wildwoods Holding Corp.*, 613 S.E.2d 402, 406 (Va. 2005) (holding that a contract signed by one director, but not

---

[8]This amount includes contributions from both AIADA and AIADA Services. The AIADA portion reflects annual contributions of $44,080 during 1995 and 1996, annual contributions of $20,448 made from 1997 to 2002, and a prorated contribution of $5,112 made in 2003, as well as four-percent interest accumulations expressly required by Plaintiff's deferred compensation agreement.  The AIADA Services portion reflects contributions of $25,000 made in 1995 and 1996 based on Plaintiff's annual bonuses, a $59,448 contribution in 1997, annual contributions of $52,448 made from 1998 to 2002, and a prorated contribution of $13,112 made in 2003.  Finally, the total amount includes $76,376.60 due under Plaintiff's Section 457 plan.  Unless otherwise noted, Defendants do not dispute Plaintiff's calculations.

-12-

authorized by the board of directors, was not binding on the corporation).

In support of this argument, Defendants attach an affidavit establishing that the April 1997 amendment was not discussed by the AIADA Board of Directors or its Executive Committee.  Defendants have not, however, made a similar representation with respect to the minutes of the AIADA Services Board of Directors, which is a separate entity, and which is the entity that purportedly authorized the April 1997 amendment.  In contrast, Plaintiff has produced an affidavit from Charles Smith stating that the AIADA Services Board of Directors approved and agreed to be bound by the April 1997 amendment before he executed it.  Plaintiff also has submitted the affidavit of Eric Holmberg, Assistant Secretary to AIADA Services at the time, who testified that he witnessed the AIADA Services Board of Directors authorize the April 1997 amendment.

Defendants have produced no evidence to contradict this testimony and have presented no compelling argument to refute the enforceability of the April 1997 amendment on AIADA Services. Defendants argue, for example, that the annual additional payment of $20,448 required under the April 1997 amendment never appeared as a liability on the financial statements of AIADA Services. While that may be the case, the internal memorandum relied upon by Defendants for this fact also acknowledges that Plaintiff's

-13-

deferred compensation agreements bound AIADA services to pay this additional amount each year.  (*See* Pl.'s Mem. Ex. I.)   This acknowledgment and the evidence submitted by Plaintiff leads the Court to conclude that the April 1997 amendment to Plaintiff's deferred compensation agreement was binding on AIADA Services.

The only remaining question is the amount presently due to Plaintiff.  AIADA and AIADA Services placed the amounts set aside for Plaintiff's deferred compensation in an investment account, which subsequently performed poorly and lost money. Defendants claim that Plaintiff is entitled only to the value of the invested funds on March 31, 2003, his last day of employment, and not the $661,833.62 that resulted from Plaintiff's calculations.  The Court disagrees.  Plaintiff's deferred compensation agreement with AIADA speaks for itself:

> Commencing upon the date of the Employee's retirement, the Corporation will pay the Employee deferred compensation for his services rendered prior to his retirement. *The amount of this deferred compensation shall be* Forty Four Thousand Eighty and 00/100ths Dollars ($44,080.00) for calendar years 1995 and 1996, inclusive, and Twenty Thousand Four Hundred Forty Eight Dollars ($20,448.00) (or a pro rata portion thereof if a portion of a year is involved) for each calendar year thereafter that the Employee is employed pursuant to the Employment Agreement, and each calendar year's deferred compensation to accrue interest thereon at least four percent (4%) per annum from the last day of each such calendar year until the commencement of payments to Employee (collectively the "Deferred Amount").

(Pl. Mot. Ex. D, Art. 2(B) (emphasis added).)  Plaintiff's deferred compensation agreement with AIADA Services, as amended

-14-

in April 1997, contains language identical to the emphasized language above. (*See* Pl. Mot. Ex. E Art. 2(B).) As this language plainly shows, Plaintiff's agreements provide that he is to receive the amount of money set aside as deferred compensation, not the present value of an account to which contributions were made. Moreover, Plaintiff's agreement with AIADA expressly provides that AIADA's contributions would accrue interest at a fixed four-percent annual rate. Defendants' interpretation of the deferred compensation contracts would eviscerate this agreed-upon language.

Accordingly, the Court will grant Plaintiff's Motion for summary judgment as to the remaining claims in Count V.[9] The Court notes that AIADA has already issued a check to Plaintiff in the gross amount of $76,376.60, the total of AIADA's obligation under Plaintiff's Section 457 plan. AIADA Services has issued the gross amount of $177,553.02 to Plaintiff as deferred compensation. Plaintiff is therefore entitled to $200,657 under his deferred compensation agreement with AIADA and an additional $207,247 under his deferred compensation agreement with AIADA Services. The Court will address Plaintiff's claims for interest and attorneys' fees at a later date.

---

[9] Specifically, Plaintiff's Motion is granted with respect to the claims in subparagraphs (a), (b), (d), (e), and (f) of Count V. *See supra* note 7.

-15-

C.   Count IX:   Employee Retirement Income Security Act ("ERISA")

Plaintiff has also alleged that AIADA and AIADA Services violated ERISA by, *inter alia*, failing to make proper pension plan contributions, mishandling Plaintiff's pension plan funds, and failing to supply requested information to Plaintiff concerning his pension funds.  Defendants' Motion with respect to this Count relies solely on the contention that Plaintiff has produced no evidence to support his claims.  As stated above, however, Plaintiff has established that $407,904 was not paid under his deferred compensation agreements with AIADA and AIADA Services.  Summary judgment would therefore be inappropriate on Count IX at this time.  The Court will deny Defendants' Motion for summary judgment as to Count IX and will note that both parties have agreed that ERISA mandates this claim to be tried without a jury.

D.   Count VII:   Age Discrimination in Employment Act ("ADEA")

Plaintiff alleges that Defendants' July 2002 redefinition of his job responsibilities violated the ADEA. Specifically, Plaintiff claims that Defendants undertook to eliminate the majority of his duties as AIADA president because they sought to replace him with a younger successor.  Plaintiff was fifty-four years old in July 2002.  He cites the fact that AIADA hired Defendant Marianne McInerney, who was thirty-nine years old at the time, to succeed him.

-16-

The ADEA applies only to employers who have "twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 29 U.S.C. § 630(b). Defendants have introduced payroll records demonstrating that AIADA and AIADA Services each employed less than twenty employees at all times between January 2001 and December 2003. This evidence proves that neither AIADA nor AIADA Services were subject to the ADEA during the relevant time frame. In their Answer to Plaintiff's Complaint, however, Defendants admitted that both AIADA and AIADA Services were subject to the ADEA. For this reason, Plaintiff has objected to the use of this evidence.

"The general rule is that a party is bound by the admissions of his pleadings." *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) (citation and internal quotation omitted). Rule 15(b) of the Federal Rules of Civil Procedure allows for amendment of the pleadings to conform to the evidence presented.

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Fed. R. Civ. P. 15(b). As the Rule contemplates, the evidence offered by Defendants is not within the issues raised by the pleadings. Although Defendants admitted that AIADA and AIADA

Services were subject to the ADEA, they made no representation with respect to the number of persons employed by either entity. *Cf. Lucas*, 879 F.2d at 1243 (reversing a district court's finding that a briefing certificate was not a job requirement, where the certificate requirement was "raised," "admitted," and "resolved" by the pleadings).

Plaintiff has not satisfied the Court that reliance on the payroll records would prejudice his action upon the merits. It is of particular note that Plaintiff was the president of both AIADA and AIADA Services until March 31, 2003. It would defy credulity to contend that the president of an organization as small as AIADA or AIADA Services had no knowledge of the number of persons employed by that organization. Even after the reduction in his duties during July 2002, Plaintiff was surely aware that AIADA employed no more than thirteen people and that AIADA Services had two employees. It is therefore unlikely that Defendants' claim of less than twenty employees caught Plaintiff by surprise. For the foregoing reasons, the Court will consider the payroll records submitted by Defendants. As AIADA and AIADA Services were "employers" under the ADEA during the relevant time frame, the Court will grant Defendants' Motion for summary judgment on Count VII.

E.  Count VIII:  Virginia Human Rights Act ("VHRA")

        Plaintiff's claim under the VHRA primarily relies on the violation of the ADEA alleged in Count VII.  *See* Va. Code § 2.2-3901 (creating a Virginia cause of action for conduct violating, *inter alia*, federal statutes governing age discrimination).  As a general matter, the VHRA does not create any new causes of actions; rather, it applies only where a violation of existing law is found.  *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 57 n.1 (4th Cir. 1995).  As the Court has already determined that AIADA and AIADA Services were not "employers" under the ADEA, summary judgment against Count VIII is appropriate to the extent that Plaintiff's VHRA claim rests on an alleged violation of the ADEA.

        In his Opposition to Defendants' Motion, Plaintiff relies on a specific section of the VHRA that does create a cause of action.  This provision prohibits employers "employing more than five but less than 15 persons" from discharging an employee based on, *inter alia*, age when the employee is forty years old or older.  Va. Code § 2.2-2639(B).  However, the statute applies only where there has been a discharge.  *See Collins v. Franklin*, 142 F. Supp. 2d 749, 751 (W.D. Va. 2000) (dismissing an action for sexual harassment, filed under the precursor to § 2.2-2639(B), for failure to state a claim).  The employment action alleged by Plaintiff was not a discharge, but rather a reduction

in job responsibilities.  As the Court has stated with respect to Count II, this reduction in responsibility did not constitute a constructive discharge, due to Plaintiff's failure to resign. For these reasons, the Court will grant Defendants' Motion with respect to Count VIII.

F.  Count XI:  Tortious Interference With an Employment Contract

Count XI is based on the July 15, 2002 decision of the Executive Committee of the AIADA Board of Directors to alter Plaintiff's job responsibilities.  According to Plaintiff, the members of the Executive Committee acted outside the scope of their authority in voting to reduce Plaintiff's responsibilities. Plaintiff claims that the individual defendants who comprised the Executive Committee at this time tortiously interfered with his employment contract with AIADA.

The elements required to establish a prima facie case of tortious interference with a contract in Virginia are:

> (1) the existence of a valid contractual relationship
> or business expectancy; (2) knowledge of the
> relationship or expectancy on the part of the
> interferor; (3) intentional interference inducing or
> causing a breach or termination of the relationship or
> expectancy; and (4) resultant damage to the party whose
> relationship or expectancy has been disrupted.

*Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985).  It is implicit in these elements that there must be a breach or termination of a contractual relationship or business expectancy.  As discussed with respect to Count I, however, the AIADA bylaws vested both

the Board of Directors and the Executive Committee with the authority to define the president's duties.  The Executive Committee's redefinition of Plaintiff's role therefore could not have caused a breach of Plaintiff's contract.

The tortious interference cause of action also presupposes that the conduct causing the breach of contract is that of a third person.  In other words, a person cannot intentionally interfere with his own contract. *Fox v. Deese*, 362 S.E.2d 699, 708 (4th Cir. 1987).  Because the Executive Committee members were acting within the scope of their authority, they were acting as agents of AIADA.  In this regard, AIADA's contract was also their contract, and they could not interfere with it by redefining Plaintiff's responsibilities.  Accordingly, the Court will grant Defendants' Motion for summary judgment as to Count XI.

## G.  Count XII:  Fraud

According to Plaintiff, on several occasions in December 2001 and January 2002, he discussed the possibility of renewing his employment contract with Defendant Jamie Auffenberg. Plaintiff has testified that during these conversations, Auffenberg told him to wait in seeking to renew his employment agreement because of financial issues confronting AIADA at the time.  Plaintiff claims that Auffenberg stated that the Board of Directors wanted to pay Plaintiff more money and that, in doing

so, Auffenberg communicated to Plaintiff the Board's intent to
renew Plaintiff's employment contract.

　　　　To establish a cause of action for fraud in Virginia,
Plaintiff must show:  "(1) a false representation, (2) of a
material fact, (3) made intentionally and knowingly, (4) with
intent to mislead, (5) reliance by the party misled, and (6)
resulting damage to the party misled."  *Winn v. Aleda Const. Co.,
Inc.*, 315 S.E.2d 193, 195 (Va. 1984).  Defendants primarily argue
that Plaintiff's testimony establishes only that Auffenberg made
promises for the future, not misrepresentations of existing fact.
*See Sea-Land Serv., Inc. v. O'Neal*, 297 S.E.2d 647, 651 (Va.
1982) (stating that an action for fraud cannot be predicated on
unfulfilled promises or statements regarding future events).
However, the statements alleged by Plaintiff, if taken as true,
do not speak to future events, but rather to the present intent
of Auffenberg and the Board to renew Plaintiff's contract.  Such
would be actionable as fraud if it were a misrepresentation of
the actual intent of either.  *See Colonial Ford Truck Sales, Inc.
v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985).

　　　　Nevertheless, there must be "clear, cogent, and
convincing proof" that the promisor "had the intent to defraud at
the time he made the promise."  *Patrick v. Summers*, 369 S.E.2d
162, 164 (Va. 1988).  In this case, Auffenberg made the alleged
misrepresentations in December 2001 and January 2002.  Plaintiff

-22-

has presented no evidence that Auffenberg, the Executive
Committee, or the Board of Directors intended at any time prior
to June 2002 to allow his employment contract to expire.  In
contrast, Auffenberg has testified that at the time of his
representations to Plaintiff, he had no intent of recommending
termination but instead believed that the financial condition of
AIADA necessitated delaying Plaintiff's contract renewal.
Plaintiff has offered only unsupported speculation as to
Auffenberg's intent.  Accordingly, Defendants are entitled to
summary judgment on Count XII.

H.  Count XIII:  Defamation

        Plaintiff's claim for defamation is premised on several
statements made by Defendants Buzz Rodland, Auffenberg, and
Timothy Smith to the automotive media.  In a July 29, 2002
article in the *Automotive News*, Rodland was quoted as saying,
"There have just been a number of folks on our Board and in our
Membership that have felt that as an association we are
drifting."  The same article quoted Auffenberg as saying that
AIADA "needs to step up to a higher level."  In a July 29, 2002
article in *Car Dealer Insider*, Smith was quoted as saying, "We've
got to take it up a notch."  Finally, on or about January 26,
2004, Rodland told various members of the automotive media that
AIADA had been without a lobbyist for two years.  Each of these
statements occurred in proximity to a discussion of AIADA's

-23-

decision to allow Plaintiff's employment contract to expire, and so Plaintiff claims that each statement was directed at him.[10]

True statements cannot be the basis of a defamation claim, and Plaintiff bears the burden of proving that the statements in question were false. *Bills v. Sunshine Wireless Co., Inc.*, 824 F. Supp. 60, 64 (E.D. Va. 1993). *See also Great Coastal Exp., Inc. v. Ellington*, 334 S.E.2d 846, 852 (Va. 1982). To establish the falsity of the published statements, Plaintiff relies solely on several of Defendants' admissions in their Answer. Specifically, Defendants admitted that Plaintiff was qualified for his job and was "widely regarded in the automotive industry as one of its premier executives." (Pl.'s Compl. ¶ 158; Defs.' Answer ¶ 158.) After the July 15, 2002 meeting, Auffenberg told AIADA staff that Plaintiff "was the best president AIADA ever had." (*Id.*) *Washingtonian* magazine twice named Plaintiff one of the "50 Top Guns in Washington" during his tenure. (*Id.*) *Automotive News* published two separate articles, one describing Plaintiff as "brilliant and charismatic," and the other describing him as one of the most "visible" automotive industry leaders in Washington and "energetic and effective." (*Id.*)

---

[10]In Plaintiff's Complaint, he also attributes to the individual defendants several published statements that he was "fired" or "ousted." Plaintiff has since testified, however, that none of these statements were made by or could be attributed to the individual defendants. The Court will therefore grant summary judgment as to these statements.

The cited admissions fail to establish the falsity of the allegedly defamatory statements. Defendants' admission that Plaintiff was qualified for his job and Auffenberg's statement that Plaintiff "was the best president AIADA ever had" do not contradict with the statements Plaintiff now claims are defamatory. Assuming both admissions were true, they are perfectly consistent with statements that persons affiliated with AIADA felt that the organization was drifting, that AIADA needed to "step up to a higher level" or "take it up a notch," and that AIADA lacked a lobbyist for two years. The other admissions relied upon by Plaintiff constitute nothing more than third party statements. The high regard with which other members of the automotive industry held Plaintiff does not prove the falsity of Defendants' statements. As Plaintiff has failed to prove that the published statements were false, the Court will grant summary judgment on Count XIII. *See Shenandoah Pub. House, Inc. v. Gunter*, 427 S.E.2d 370, 372 (Va. 1993) ("[W]ithout proof of falsity, there can be no recovery for defamation.").

I.  Count XV:  Innocent Misrepresentation/Constructive Fraud

Plaintiff has also pleaded a constructive fraud claim based on the December 2001 and January 2002 statements of Auffenberg regarding the possibility of renewing Plaintiff's employment contract. A cause of action for constructive fraud in Virginia requires Plaintiff to show, by clear and convincing

evidence, that "a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Mortarino v. Consultant Eng'g Serv., Inc.*, 467 S.E.2d 778, 782 (Va. 1996).  The person making the representation must represent as true a fact that is actually false and must do so in a way that would induce a reasonable person to rely on the representation, with the intent that the person would act in reliance on the representation.  *Id.*  As stated in the discussion of Count XII, Plaintiff has offered no evidence that Auffenberg's statements in December 2001 and January 2002 were in any way contrary to his own intent or the intent of the Board of Directors.  The Court will therefore grant Defendants' Motion as to Count XV.

J.  Count XVI:  Common Law and Statutory Civil Conspiracy

        Plaintiff's final Count alleges that the actions of the individual defendants that led to AIADA's redefinition of his job responsibilities and nonrenewal of his employment contract constituted a civil conspiracy.  Virginia law prohibits two or more persons from acting in concert for the purpose of "(i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from

-26-

doing or performing any lawful act." Va. Code § 18.2-499. Of course, it takes at least two persons to make up a conspiracy. For this reason, a corporation cannot conspire with itself. *Griffith v. Electrolux Corp.*, 454 F. Supp. 29, 32 (E.D. Va. 1978). Moreover, "[s]ince a corporation can act only through its agents, officers and employees, a 'conspiracy' between a corporation and agents of the corporation acting within the scope of their employment is a legal impossibility." *Id.*

In this case, the alleged co-conspirators were all agents of AIADA acting within the scope of their employment. As previously stated, AIADA's bylaws, incorporated by reference into Plaintiff's employment agreement, granted the Executive Committee the authority to define Plaintiff's job responsibilities. Thus, the actions of the individual defendants in redefining Plaintiff's responsibilities were legitimate exercises of their authority. As the individual defendants were acting within the scope of their employment, the alleged conspiracy was performed by a single entity. *See Fox*, 362 S.E.2d at 708. Accordingly, Defendants are entitled to summary judgment on Count XVI.

K.  Counts VI, X, and XIV

Plaintiff's Complaint also alleged a claim against AIADA and AIADA Services for anticipatory repudiation of Plaintiff's employment contract (Count VI) and claims against the individual defendants for intentional infliction of emotional

-27-

distress (Count X) and breach of fiduciary duty (Count XIV).  At oral argument on these Motions, Plaintiff moved to take a nonsuit on Counts VI, X, and XIV.  Accordingly, Counts VI, X, and XIV will be dismissed.

### IV.  Conclusion

For the foregoing reasons, the Court will GRANT Defendants' Motion for Summary Judgment as to Counts I, II, III, IV, VII, VIII, XI, XII, XIII, XV, and XVI; DENY Defendants' Motion as to Counts V and IX; GRANT Plaintiff's Motion for Summary Judgment as to Count V; DENY Plaintiff's Motion as to Counts I and IV; and DISMISS Counts VI, X, and XIV without prejudice.  An appropriate Order shall issue.


November 22, 2005                     _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                     UNITED STATES DISTRICT COURT JUDGE